**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad*
Christopher M. McNerney*
Rebecca L. Pattiz*
685 Third Avenue, 25th Floor
New York, New York 10017

*Pro Hac Vice* forthcoming

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WALTER PICKETT and MARSHAWN PEARSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> EXEL INC. d/b/a DHL SUPPLY CHAIN, <br><br> Defendant. | Case No.  23-cv-1655 <br><br> CLASS ACTION COMPLAINT |

Plaintiffs Walter Pickett and Marshawn Pearson, individually and on behalf of all others similarly situated, allege upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1. Defendant Exel Inc., d/b/a DHL Supply Chain ("DHL Supply Chain") is one of the nation's largest providers of product logistics and freight transportation services, including warehousing, fulfillment, distribution, and other supply chain management services.

2. DHL Supply Chain employs thousands of employees in its warehouses and other service locations nationwide who perform various tasks related to DHL Supply Chain's

fulfillment and transportation of products to customers nationwide and globally.

3.    As a facet of its employment process, DHL Supply Chain implements a standardized criminal history screening policy and practice that denies job opportunities to individuals with non-job-related convictions.  This policy results in a blanket ban on employment for applicants with certain prior criminal convictions.

4.    It was this criminal history screening policy that led to the denial of Walter Pickett – a temporary worker already employed at DHL Supply Chain as a forklift driver through a staffing agency at the time of application, and Marshawn Pearson.

5.    Leading social science researchers report that "there is clear and convincing evidence that [B]lack [] men face higher odds of incarceration than white men (Bureau of Justice Statistics, 2008, Table 6)."[1]  For example, in 2007 the incarceration rate for Black men was six and a half times greater than the rate for white men.[2]

6.    A number of causal factors including the racial differences in arrest rates and "stereotypes of [B]lacks and Hispanics—particularly young unemployed [B]lack and Hispanic males—as more threatening and dangerous than other offenders" result in the disproportionate representation of individuals from these minority groups in the criminal justice system.[3]

7.    Even among the previously incarcerated population, Black applicants are 125% less likely to receive a callback for an interview or be offered a job as compared to white male applicants with prior criminal histories.[4]

---

[1]    Scott H. Decker, Ph.D., Cassia Spohn, Ph.D., and Natalie R. Ortiz, M.S., Final Report to the National Institute of Justice, *Criminal Stigma, Race, Gender, and Employment: An Expanded Assessment of the Consequences of Imprisonment for Employment* (January 2014).
[2]    *Id.* at 6.
[3]    *Id.* at 9; Blumstein, A., *Racial disproportionality of U.S. prison populations revisited.* University of Colorado Law Review, 64, 751 (1993).
[4]    *Id.* at 50.

8.      Accordingly, criminal history screening policies and practices like the one employed by DHL Supply Chain, which blanketly bar individuals with non-job-related convictions from employment without any justifiable business reason, can result in an unlawful disparate impact on Black and Hispanic applicants.

9.      Studies show that employment practices that use prior criminal history as a bar to employment, particularly in the low-skill job force where formerly incarcerated individuals often first seek employment upon re-entry, further exacerbate existing racial disparities in employment.[5]

10.     As the U.S. Commission on Civil Rights has found, "[w]hen the collateral consequences [of criminal convictions] are unrelated [either to the underlying crime for which a person has been convicted or to a public safety purpose], their imposition generally negatively affects public safety and the public good."[6]  Therefore, "[e]mployers should not automatically disqualify a candidate with a criminal record, except in circumstances when the criminal record *directly* conflicts with the scope of employment."[7]

11.     Named Plaintiffs are Black men who applied for and received conditional offers of employment with DHL Supply Chain as forklift drivers in DHL Supply Chain's product warehouses, subject to a criminal background check.

12.     After a background check was run, DHL Supply Chain subsequently withdrew Plaintiffs' job offers based on its restrictive criminal history screening policy, which

---

[5]      Jennifer L. Doleac and Benjamin Hansen, *Does "Ban the Box" Help or Hurt Low-Skilled Workers? Statistical Discrimination and Employment Outcomes When Criminal Histories are Hidden*, NBER Working Paper No. 22469 (July 2016).

[6]      U.S. Commission on Civil Rights, *Collateral Consequences: The Crossroads of Punishment, Redemption, and the Effects on Communities* (June 2019), at 133, *available at* https://www.usccr.gov/pubs/2019/06-13-Collateral-Consequences.pdf.

[7]      *Id.* at 137 (emphasis added).

automatically triggers rejection for certain criminal offenses without any individualized analysis of the applicant or the offense's relation to the job sought.

13.     Because Black and Hispanic individuals are subjected to arrest and conviction at disproportionally higher rates than white people, particularly certain felony and drug-related offenses, DHL Supply Chain's policy and practice of denying applicants employment based on their criminal history has an unjustified and unlawful disparate impact.

14.     DHL Supply Chain's policy is not job related or consistent with business necessity. Accordingly, Plaintiffs allege that DHL Supply Chain implements a criminal history screening policy and practice that perpetuates gross racial disparities in the criminal justice system in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq*.

15.     Plaintiffs seek monetary damages, and injunctive and declaratory relief on behalf of themselves and all other DHL Supply Chain applicants similarly impacted nationwide, as outlined further below.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Plaintiffs' Title VII claim pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–5(f)(3).

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e–5(f)(3) because a substantial part of the events and omissions giving rise to the claim alleged herein occurred in this District, and but for DHL Supply Chain's actions, Plaintiff Pickett would have continued to work in this District for DHL Supply Chain.

18.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     Plaintiffs have exhausted their administrative remedies and complied with all statutory prerequisites to their Title VII claim.

20.     Plaintiff Pickett filed a Charge of Discrimination, individually and on behalf of individuals similarly situated with the Equal Employment Opportunity Commission ("EEOC") on March 28, 2017, alleging that DHL Supply Chain's policy of denying employment to persons with criminal records without any individualized analysis has a disparate impact on Black applicants and was not consistent with any business necessity in violation of Title VII.  On or about March 14, 2019, the EEOC issued a Notice of Right to Sue letter in response to Plaintiff Pickett's Charge.  Plaintiffs and DHL Supply Chain agreed to toll the time to file Plaintiffs' claims, and those of the Putative Class, on or about March 21, 2019.

21.     Plaintiff Pearson, individually and on behalf of individuals similarly situated, filed a Charge of Discrimination with the EEOC on or about May 25, 2018, alleging that DHL Supply Chain's policy of denying employment to persons with criminal records without any individualized analysis has a disparate impact on Black and Hispanic applicants and was not consistent with any business necessity in violation of Title VII.  On or about March 22, 2022, the EEOC issued a Notice of Right to Sue letter in response to Plaintiff Pearson's Charge.

## PARTIES

### Plaintiffs

22.     Plaintiffs and the putative Class Members they seek to represent are each "persons," "individuals," and "applicants for employment" within the meaning of Title VII.

23.     Plaintiff Pickett is currently a resident of Las Vegas, Nevada, and Plaintiff Pearson is currently a resident of Fort Worth, Texas.

24.     Plaintiffs each had prior criminal convictions at the time of their application to DHL Supply Chain for employment.

25.     Plaintiffs each applied to work for DHL Supply Chain – Plaintiff Pickett at DHL Supply Chain's University Park, Illinois location, and Plaintiff Pearson at DHL Supply Chain's Fort Worth, Texas location – as forklift drivers involved in the preparation and transport of products to designated areas within DHL Supply Chain's warehouse for shipment nationally and internationally.

26.     Plaintiffs were found to be qualified for the forklift driver position and offered employment conditional on a review of their criminal background but were subsequently denied employment by DHL Supply Chain because of their criminal histories.

**Defendant DHL Supply Chain**

27.     DHL Supply Chain is a global third-party logistics and freight transportation company.

28.     DHL Supply Chain provides contract logistics and freight transportation services to customers globally and nationwide and employs approximately 33,000 employees across over 400 sites in North America.

29.     DHL Supply Chain employs individuals in its warehouse and other service locations to manage and oversee the transport of products within DHL Supply Chain's warehouse to their designated locations for shipment.

30.     DHL Supply Chain maintains its North American headquarters in Westerville, Ohio and operates warehouses and other service locations nationwide.

31.     At all relevant times, DHL Supply Chain has been an employer as defined by Title VII.

32.     At all relevant times, DHL Supply Chain has been a company involved in the national and international transportation of goods.

## STATEMENT OF FACTS

33.     As forklift drivers for DHL Supply Chain, Plaintiffs were among a class of workers engaged in the movement of goods in foreign or interstate commerce.

34.     DHL Supply Chain found Plaintiffs qualified for the position at issue and offered each of them conditional offers of employment, subject to a criminal background check.

35.     As a result of DHL Supply Chain's criminal history screening policy, which does not adequately account for DHL Supply Chain's business needs or assess the job-relatedness of a conviction, Plaintiffs were each denied employment by DHL Supply Chain because of their criminal histories.

36.     DHL Supply Chain denied employment to Plaintiff Pickett despite his demonstrated ability to perform the job he had previously held in a temporary capacity at DHL Supply Chain for approximately eight months, showing that his convictions were not job-related.

37.     DHL Supply Chain denied employment to Plaintiff Pearson based on minor misdemeanor convictions that were plainly not job-related.

38.     Plaintiffs' experiences across Illinois and Texas illustrate how DHL Supply Chain imposes an overly restrictive criminal history screening policy and practice that is not job related or consistent with business necessity in its warehouse locations nationwide.

**Plaintiff Walter Pickett**

39.     In or around February 2016, Plaintiff Pickett applied for a warehouse position at a DHL Supply Chain warehouse location in University Park, Illinois, through Snider-Blake Personnel ("Snider-Blake"), a staffing agency.

7

40. After an initial interview, Plaintiff Pickett advanced to the next round of the application process and was invited to interview with a supervisor at DHL Supply Chain in its University Park warehouse.

41. During Plaintiff Pickett's interview, he disclosed his prior criminal history. The supervisor informed Plaintiff Pickett that his prior criminal history would not be a barrier to employment at DHL Supply Chain because he was only seeking a temporary position.

42. After the interview, Plaintiff Pickett was hired as a temporary worker working for DHL Supply Chain through Snider-Blake.

43. Plaintiff Pickett began working as a temporary worker at DHL Supply Chain's University Park warehouse as a forklift driver on approximately February 26, 2016.

44. Plaintiff Pickett worked as a forklift driver at the DHL Supply Chain warehouse performing the same or similar work as other permanent DHL Supply Chain employees for over eight months without incident.

45. In or around November 2016, Plaintiff Pickett applied to change his employment status from temporary to a permanent, DHL Supply Chain employee. Plaintiff Pickett understood that the change in employment status would give him access to a number of employment benefits, including increased compensation and health benefits for the same work he was already successfully performing as a temporary worker.

46. As a facet of DHL Supply Chain's standard employment process, DHL Supply Chain required Plaintiff Pickett to consent to a background check as a condition to employment.

47. On approximately November 30, 2016, Plaintiff Pickett received the results of his background check which reported an 18-year-old felony conviction from 1998 and a 3-year-old probation violation for failing to report from 2013.

48.     On or about December 8, 2016, DHL Supply Chain informed Plaintiff Pickett by letter that DHL Supply Chain was denying his application for employment based in whole or in part on the information contained in his criminal history background check report.

49.     Plaintiff Pickett was subsequently fired from his temporary position as well due to his criminal history, despite his demonstrated ability to perform the forklift driver job.

50.     DHL Supply Chain did not provide Plaintiff Pickett with an opportunity to provide additional information regarding evidence of rehabilitation, nor did it consider any individual assessment factors before taking adverse action against him based on his criminal history.

51.     Had DHL Supply Chain inquired or given Plaintiff Pickett an opportunity to provide additional information, it would have found significant evidence of Plaintiff Pickett's rehabilitation, including:

    a.  The absence of any subsequent conviction for a violent crime since re-entry into the community;

    b.  His obtainment of his GED and certificates in small business management and computer technology;

    c.  His achievement of certificates in building maintenance, and customer service, and successful completion of an anger management course;

    d.  His deep involvement in the lives and communities of his two young children; and

    e.  His involvement as a volunteer in a non-profit in the Roseland neighborhood of Chicago, where he spoke to individuals in the neighborhood about how to find gainful employment (including the challenges associated with criminal records).

52.     There is no evidence of any justifiable business reason for the denial of Plaintiff Pickett's employment, consistent with Title VII.

53.     Based on Plaintiff Pickett's observation and information shared with him by other employees denied employment by DHL Supply Chain due to their criminal histories, this experience is not unique to Plaintiff Pickett, who has reason to believe that DHL Supply Chain imposes the same overly restrictive criminal history screening policy and practice in its warehouse locations nationwide.

**Plaintiff Marshawn Pearson**

54.     In or around October 2017, Plaintiff Pearson applied to work for DHL Supply Chain as a forklift driver in DHL Supply Chain's Fort Worth, TX warehouse.

55.     Plaintiff Pearson understood the DHL Supply Chain forklift job position to require him to operate a forklift in order to fulfill logistical orders and transport products within the warehouse for future shipment.

56.     After an interview, Plaintiff Pearson was offered the position on or around the end of October 2017, subject to the completion of a background check and a review of his criminal history.

57.      At no time did DHL Supply Chain ask Plaintiff Pearson to provide additional information regarding his application responses prior to DHL Supply Chain's denial of his employment based on his criminal history.

58.     Plaintiff Pearson authorized the requested background check, which reported one misdemeanor conviction from 2011 and another misdemeanor conviction from 2013.

59.     Upon the return of the results of Plaintiff Pearson's criminal background check, DHL Supply Chain, through Mr. Jones, informed him by phone that he had been denied employment based on the results of his background check and criminal history.

60.     DHL Supply Chain did not inquire about or consider any individual assessment factors or evidence of rehabilitation before taking adverse action against him based on his criminal history.

61.     Had DHL Supply Chain conducted an individualized analysis of the relevant *Green* factors or considered Plaintiff Pearson's rehabilitation evidence, it would have learned that:

> a.  He has not been charged or convicted of any other offense following the two aforementioned misdemeanors; and
>
> b.  He served his community through outreach and frequently volunteered at various services organization, such as the Salvation Army.

62.     DHL Supply Chain never sought or considered information from Plaintiff Pearson regarding the circumstances of his convictions or evidence of his rehabilitation or good conduct.

63.     There is no evidence of any justifiable business reason for the denial of Plaintiff Pearson's employment, consistent with Title VII.

64.     This experience is not unique to Plaintiff Pearson who has reason to believe that DHL Supply Chain imposes the same overly restrictive criminal history screening policy and practice in its warehouse locations nationwide.

**Factual Allegations Common to Plaintiffs and All Putative Class Members**

***DHL Supply Chain's Criminal History Screening Policy Has a Disparate Impact on Black and Hispanic Applicants***

65.     DHL Supply Chain employs a blanket criminal history screening policy, that does not provide for individualized analysis.

66.     DHL Supply Chain's criminal history screening policy categorizes a wide swath of criminal offenses as exclusionary offenses, which bar an applicant from employment.

11

67.     Under DHL Supply Chain's criminal history screening policy and practice, applicants with prior criminal convictions that fall within DHL Supply Chain's exclusionary felony offenses list are screened out, without any individualized review or consideration of evidence of rehabilitation, and ultimately denied employment.

68.     DHL Supply Chain treats misdemeanor convictions the same as felony convictions if they occurred within the last five years and are related to any of the exclusionary offenses.

69.     DHL Supply Chain also automatically rejects applicants who fail to completely disclose their entire criminal history, without any further inquiry into the alleged incomplete or falsified disclosure.

70.     As a result of DHL Supply Chain's blanket policy, Plaintiffs and other similarly situated Black and Hispanic applicants are disproportionately denied employment.

71.     Title VII prohibits employment policies and practices that have a disparate impact on protected groups.  *See* 42 U.S.C. §§ 2000e *et seq.*

72.     As the U.S. Commission on Civil Rights recently reported, "when employers use criminal background checks to indiscriminately disqualify all applicants with criminal records, these employers severely curtail employment opportunities for formerly incarcerated people."[8] Moreover, "[b]ecause [B]lack and Latino individuals are likelier to have criminal records than white and Asian people, . . . [B]lack and Latino males are disproportionately affected by criminal background checks."[9]

---

[8]     *See* supra note 6, p. 42.

[9]     *Id.*

73.     The U.S. Census Bureau reports that although Black individuals comprise only 29% of the U.S. population, they make up 57% of the U.S. prison population.[10]

74.     According to a report to the United Nations Special Rapporteur on Contemporary Forms of Racism, Racial Discrimination, Xenophobia, and Related Intolerance, "[i]n 2010, 8% of all adults in the United States had a felony conviction on their record" but "[a]mong African-American men, the rate was one in three."[11]  Additionally, in 2016, of the 277,000 people imprisoned for a drug offense, over 56% were Black or Latinx individuals.[12]

75.      It is undisputed among social science researchers that Black individuals interact with the criminal justice system at rates that vastly outnumber the rates of incarceration of whites.  As a result, the impact of a criminal record is much more severe on Black job applicants than it is on white applicants.[13]

76.     Audit studies conducted by researchers at Harvard and Princeton Universities also found that even among people with criminal records, Black applicants were particularly disadvantaged in the job market compared to white people with criminal records.[14]

---

[10]     Report of The Sentencing Project to the United Nations Special Rapporteur on Contemporary Forms of Racism, Racial Discrimination, Xenophobia, and Related Intolerance: Regarding Racial Disparities in the United States Criminal Justice System, The Sentencing Project (2018) at 9, *available at* https://www.sentencingproject.org/wp-content/uploads/2018/04/UN-Report-on-Racial-Disparities.pdf.

[11]     *See* supra note 9, p. 7.

[12]     *See* U.S. Department of Justice, Bureau of Justices Statistics Special Report, *Prevalence of Imprisonment in the U.S. Prison Population, 1974-2001*, 5 (2003); *See generally* Nazgol Ghandnoosh, Ph.D., Race and Punishment: Racial Perceptions of Crime and Support for Punitive Polices (September 2014).

[13]     *See generally* Devah Pager, *Marked: Race, Crime, and Finding Work in an Era of Mass Incarceration*, Chicago, IL: University Of Chicago Press (2007).

[14]     Devah Pager et al., *Discrimination in a Low-Wage Labor Market: A Field Experiment*, 74 Am. Soc. Rev. 777, 785-86 (2009); Devah Pager et al., *Sequencing Disadvantage: Barriers to Employment Facing Young Black and white Men with Criminal Records*, 623 Annals Am. Acad. Pol. & Soc. Sci. 195, 199 (2009); Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOC. 937, 955-61 (2003).

77.     Accordingly, DHL Supply Chain's criminal history screening policy and practice of denying job opportunities to individuals with prior non-job-related convictions had and continues to have a significant and detrimental impact on Black and Hispanic applicants, based on their race, color and/or national origin, as compared to white applicants.

78.     DHL Supply Chain's policies and practices as to screening applicants with criminal histories, including any blanket exclusions of individuals with felony, drug related or other types of convictions and exclusion for incomplete or inaccurate disclosure of prior criminal history, are not consistent with business necessity.

79.     DHL Supply Chain's criminal history screening policies and practices do not bear any direct relationship to the employment in question.

80.     For example, having a conviction is not an accurate proxy for determining whether an applicant would be able to perform the duties of the job.  Upon information and belief, no reliable studies or empirical data suggest that applicants with criminal records are more likely to engage in terminable offenses.[15]

81.     Courts interpreting this issue have opined that "[t]o deny job opportunities to [] individuals [with criminal histories] because of some conduct which may be remote in time or does not significantly bear upon the particular job requirements is an unnecessarily harsh and unjust burden."  *Barletta v. Riling*, 973 F. Supp. 2d 132, 139 (D. Conn. 2013) (quoting *Green v. Missouri Pac. R. Co.*, 523 F.2d 1290, 1298 (8th Cir. 1975)).

---

[15]     *See, e.g.*, Ian B. Petersen, *Toward True Fair-Chance Hiring: Balancing Stakeholder Interests and Reality in Regulating Criminal Background Checks*, 94 Tex. L. Rev. 175, 187-88 (2015).

82. DHL Supply Chain's policy and practice of denying employment to individuals with criminal histories, including felony convictions, is too broad to meet the standards of job-relatedness and consistency with business necessity.

83. Upon information and belief, DHL Supply Chain does not have a process or policy to determine whether applicants convicted of crimes have made positive changes in their lives subsequent to their convictions. DHL Supply Chain's policy and practice of banning individuals with convictions from employment has effectively foreclosed applicants' abilities to provide proof of rehabilitation, such as documentation of successful participation in drug treatment programs, educational achievements or relevant employment, or to submit certificates of relief from disabilities, which in many states create a presumption of rehabilitation.

84. Upon information and belief, DHL Supply Chain's policy and practice of rejecting individuals with criminal records has created significant barriers to employment that excluded many properly qualified persons, including disproportionate numbers of Black applicants. There are less discriminatory alternatives that would have better achieved any legitimate business purpose.

85. Less discriminatory alternatives include, but are not limited to: (1) considering all applicants with a record of conviction for a crime that by its nature does not pose a legitimate threat to the public safety or risk of workplace misconduct; and (2) giving each individual with a conviction a meaningful opportunity to demonstrate that he or she does not present a current threat, including providing evidence of rehabilitation, an explanation of events leading to the conviction, or information regarding other mitigating factors.

***Plaintiffs Were Among a Class of Workers Engaged in Foreign or Interstate Commence***

86.     Plaintiffs were among a class of workers engaged in the movement of goods in foreign or interstate commerce.

87.     DHL Supply Chain is a logistics and transportation company that provides transportation, warehousing, packaging, and logistics services to customers in the United States and abroad.

88.     DHL Supply Chain maintains over 1,400 U.S. and international warehouses and offices from which its employees oversee the management and transportation of products and goods through the supply chain from fulfillment to delivery.

89.     The DHL Supply Chain job position of forklift driver, to which Plaintiffs applied, involves the following key job responsibilities:

  a.   Loading, unloading, moving, stocking, and staging products and materials using various types of forklifts;

  b.    Pulling and preparing product for shipment;

  c.   Product inventory management;

  d.   Overseeing aspects of product fulfillment; and

  e.   Technical maintenance of forklifts and other related power equipment.

90.     Consistent with these job requirements, Plaintiffs were told that their job duties as a forklift driver would involve moving products within DHL Supply Chain's warehouse to designated staging areas for fulfillment using a forklift or other power equipment.

91.     As a temporary worker employed as a forklift driver for DHL Supply Chain, Plaintiff Pickett operated a forklift and other power equipment in DHL Supply Chain's University Park warehouse to move products to designated locations within the warehouse to

later be transported nationally and internationally to customers' designated shipment locations.

92.     Once the products were moved from their storage location within the warehouse to their designated staging area using the forklift, Plaintiff Pickett took inventory of the products to be shipped and wrapped the parcels in protective wrapping in preparation for shipment.

93.     As a forklift driver at DHL Supply Chain, Plaintiff Pickett's job also involved inventory management, which involved tracking products and placing shipment labels on products which he would scan to indicate that the products had been placed in the appropriate staging area in preparation for transport to the shipment location.

94.     Based on Plaintiff Pickett's observations, the shipping labels that he placed on packages designated for future transport often indicated the package's destination, which was often located outside of the state of Illinois.

## CLASS ACTION ALLEGATIONS

95.     Plaintiffs bring this case as a proposed class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Putative Class (the "Class").

96.     Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (c)(4) seeking injunctive and declaratory relief.

97.     Plaintiffs also bring this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and/or (c)(4) seeking backpay, monetary damages, and other make-whole relief.

98.     Plaintiffs assert this Cause of Action against DHL Supply Chain on behalf of the Class, defined as follows:

> All individuals who applied for a non-exempt position with DHL Supply Chain from January 1, 2016, up to, and including, December 31, 2021, and (i) who are Black or African American or Hispanic, solely or in combination with other races; (ii) who received a conditional offer of employment from DHL Supply Chain; (iii) who were identified as having a background report showing a criminal history; and (iv) whose conditional offer of employment with DHL Supply Chain was rescinded

by DHL Supply Chain due, at least in part, to information contained in the background report or failure to fully disclose criminal history.

99.     The members of the Class are collectively referred to as "Class Members."

100.     The Class Members identified herein are so numerous that joinder of all members is impracticable.  DHL Supply Chain is a large employer in the United States, with over 400 logistic sites. The number of job applicants harmed by DHL Supply Chain's violations of the law is far greater than feasibly could be addressed through joinder.  The precise number is uniquely within DHL Supply Chain's possession, and Class Members may be notified of the pendency of this action by published, mailed and/or e-mailed notice.

101.     There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members.  Common legal and factual questions include, among others:

a.  Whether DHL Supply Chain's policy and practice to exclude job applicants based on certain convictions had a discriminatory disparate impact on Black and /or Hispanic individuals;

b.  Whether DHL Supply Chain's policy and practice to exclude job applicants based on their criminal history is job-related and/or consistent with business necessity;

c.  Whether there was a less discriminatory policy and practice that would have met DHL Supply Chain's legitimate needs;

d.  Whether Class Members are entitlement to damages; and

e.  Whether a declaratory judgment and/or injunctive or other equitable relief is warranted regarding DHL Supply Chain's policies and practices.

102.     Plaintiffs are members of the Class they seek to represent.  DHL Supply Chain took discriminatory adverse action against Plaintiffs based on their criminal histories.

103.     Plaintiffs' claim is typical of the claim of the Class they seek to represent: (1) Plaintiffs both applied for a job with DHL Supply Chain within the relevant time period; (2)

18

Plaintiffs both were subjected to the challenged criminal history screening process for applicants; and (3) Plaintiffs both were denied the position because of their criminal histories. This claim is shared by each and every Class Member. Upon information and belief, it is DHL Supply Chain's standard practice to take adverse actions against applicants based on criminal convictions in a manner that is discriminatory and inconsistent with business necessity.

104. Plaintiffs will fairly and adequately represent and protect the interests of Class Members because their interests coincide with, and are not antagonistic to, the interests of the Class Members they seek to represent. Plaintiffs have retained counsel who are competent and experienced in complex class actions, including litigation pertaining to Title VII, criminal background checks, disparate impact litigation, other employment litigation, and the intersection thereof. There is no conflict between Plaintiffs and the Class Members.

105. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class Members have been damaged and are entitled to recovery as a result of DHL Supply Chain's uniform policies and practices. DHL Supply Chain has acted and/or refused to act on grounds generally applicable to the Class Members, making declaratory and injunctive relief appropriate with respect to Plaintiffs and the Class Members as a whole. Because DHL Supply Chain has maintained a common policy of denying employment to individuals with certain criminal convictions but may not have explained that policy to all Class Members, many Class Members may be unaware that their rights have been violated. Judicial economy will be served by the maintenance of this lawsuit as a class action, in that it is likely to avoid the burden which would otherwise be placed on the judicial system by the filing of many similar suits by individually harmed persons. There are no obstacles to the effective and efficient management of this lawsuit as a class action.

**CAUSE OF ACTION**

**FIRST CLAIM FOR RELIEF**
**Disparate Impact Discrimination**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

106.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

107.     Named Plaintiffs bring this claim on their own behalf and on behalf of the Class.

108.     Plaintiffs filed charges with the EEOC, with class-wide allegations, and have thus exhausted the administrative remedies.

109.     DHL Supply Chain's criminal history screening policy and practice of denying employment opportunities to individuals with criminal convictions has harmed, and continues to harm, Plaintiffs, and constitutes unlawful discrimination on the basis of race, color, and/or national origin in violation of 42 U.S.C. §§ 2000e *et seq.*

110.     DHL Supply Chain's policy and practice of denying employment opportunities to individuals with criminal convictions had and continues to have a disparate impact on Black and/or Hispanic individuals and is neither job related nor consistent with business necessity. Even if DHL Supply Chain's policy and practice of denying employment opportunities to individuals with criminal convictions could be justified by business necessity, a less discriminatory alternative exists that would have equally served any legitimate purpose.

111.     DHL Supply Chain's conduct has caused, and continues to cause, Plaintiffs and the members of the Class losses in earnings and other employment benefits.

112.     Plaintiffs and the Class also seek injunctive and declaratory relief to correct DHL Supply Chain's discriminatory policies and practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members pray for relief as follows:

a.      A declaratory judgment that the practices complained of herein are unlawful and violate Title VII;

b.      A preliminary and permanent injunction against DHL Supply Chain and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

c.      An order that DHL Supply Chain institute and carry out policies, practices, and programs that provide equal employment opportunities for applicants with criminal records who would be eligible under application of Title VII and that DHL Supply Chain eradicate the effects of past and present unlawful employment practices;

d.      Certification of the case as a class action on behalf of the proposed Class;

e.      Designation of Plaintiffs as representatives of Class Members;

f.      Designation of Plaintiffs' counsel of record as Class Counsel;

g.      Restoring of Plaintiffs and Class Members to their rightful positions at DHL Supply Chain or those positions equivalent at DHL Supply Chain (i.e., reinstatement), or in lieu of reinstatements, an order for front pay benefits;

h.      An award of backpay for violations of Title VII;

i.      An award of nominal and/or exemplary damages;

j.      An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

k.      Pre-judgment and post-judgment interest, as provided by law;

l.      Payment of a reasonable service award to Plaintiffs, in recognition of the services they have rendered and will continue to render to Class Members, and the risks they have taken and will take; and

m.      Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated:  New York, New York
       March 16, 2023

Respectfully submitted,

By:    */s/ Justin M. Swartz*     

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Ossai Miazad*
Christopher M. McNerney*
Rebecca L. Pattiz*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
E-mail: jswartz@outtengolden.com
E-mail: om@outtengolden.com
E-mail: cmcnerney@outtengolden.com
Email: rpattiz@outtengolden.com

*Pro Hac Vice* forthcoming

*Attorneys for Plaintiffs and the Putative Class*